no limitation over. It was held that on C.'s death the estate vested absolutely in his children, and, if they died under age, in their heirs. Rapallo, J., states the rule without qualification (page 35): "It is well settled that, where an estate in land is devised to an infant 'when he attains the age of twenty-one years,' his attaining that age is not a condition precedent to the vesting of his estate, but a simple postponement of the period at which he shall take possession. He takes a vested fee." If, he adds, there is a contingent limitation over in case he does not attain majority, it "does not prevent the vesting of the fee in the first devisee, but merely renders such fee defeasible by condition subsequent. * * * When, therefore, as in the present case, there is no such contingent limitation over, the devisee or devisees to whom the land is given 'when they become of age' take an absolute and indefeasible fee, and in case of their dying under age the fee vests in their heirs, and not in the heirs of the testator." The direction to divide which is found in the present will makes even plainer the intention to postpone the enjoyment merely, and so gives still stronger reason for applying the rule, broadly stated in Manice v. Manice, 43 N. Y. 380, that where nothing is interposed between the infant and his enjoyment of the possession of the estate, except his own minority, he has a vested estate. It is plain, therefore, that the provision for the children, as it stands, is valid.

The referee was quite right in ignoring the grant to Gilbert M. Todd. The grantee could no more, after the filing of the lis pendens, obtain a title from a party to the action which would be superior to and supersede the judgment, by means of a power of sale contained in a will, than he could by a transfer of an interest held by the grantor in his individual capacity. As to the defense of a prior action pending to partition the same property, it is enough to say that none of the appellants pleaded the fact, or raised the point at the trial.

The judgment correctly determined the rights of the parties in the premises. There is no other valid reason for assailing it, and it should be affirmed, with costs to the plaintiff and to the guardian ad litem for the infant defendants Shannon to be paid out of the fund. All concur.

---

(1 App. Div. 231.)

## In re MATTHEWS' ESTATE.

### In re SEABURY.

(Supreme Court, Appellate Division, Second Department. February 4, 1896.)

1. LEGITIMACY—PRESUMPTIONS.
   The burden of proving illegitimacy is on the party asserting it.

2. SAME—EVIDENCE.
   Respondents claimed as heirs through their mother, a half-sister of intestate. To prove illegitimacy of the half-sister, appellants testified to declarations in regard thereto by persons since deceased. . There was also evidence to show that intestate recognized that the half-sister was lawfully related to her. Held, that the evidence was insufficient to overcome the presumption of legitimacy.

Appeal from surrogate's court, Queens county.

Judicial settlement of the accounts of Robert Seabury, as executor of the will of Maryette Matthews, deceased. From a decree in so far as it directs the executor to divide $7,184.94 of the estate into 14 equal parts, instead of 11 equal parts, and to pay one of such parts to Hiram Smith, one to Ira Smith, and one to Thomas Smith, and also from the award to them of $90 costs, certain next of kin of Maryette Matthews appeal. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Horace Secor, Jr., for appellants.
Jesse Johnson, for respondents Smith and others.
John Lyon, for respondent executor.

BARTLETT, J.   The next of kin who have appealed in this matter desire to exclude the respondents Hiram, Ira, and Thomas Smith from any share in the estate of Maryette Matthews, on the ground that their mother was illegitimate.   The petition of the executor, by which the proceeding was commenced, alleged that Hiram Smith, Ira Smith, and Thomas Smith, all residing in the town of Hempstead, Queens county, N. Y., were the children of Harriet Smith, a deceased half-sister of testatrix.   This allegation was not controverted in the objections filed in behalf of the appellants; that is to say, they did not dispute the fact that the respondents were the children of a half-sister of Maryette Matthews, but they did deny that the said Hiram, Ira, and Thomas Smith were "in any way legally related to said decedent, or entitled to any share of her estate as next of kin."   At the beginning of the hearing before the acting surrogate, he ruled that the burden of establishing this objection was upon the appellants, "and not upon the executor, nor upon Hiram, Ira, and Thomas Smith," to which ruling the counsel for the appellants took an exception.   As I understand the record, this was merely equivalent to holding that there was a presumption of legitimacy, which would prevail in the absence of evidence to oppose it, and in that view of the law the acting surrogate was correct.   That the relation of parent and child existed between Harriet Smith, a half-sister of Maryette Matthews, and each of the respondents, was not questioned.   Such relation was presumed to be lawful.   "That a person born in a civilized nation," says Mr. Wharton, "is legitimate, is a presumption of law, to be binding until rebutted." 2 Whart. Ev. (Ind. Ed.) § 1298.   "The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy," said Andrews, J., in Hynes v. McDermott, 91 N. Y. 451, 459.   And, in the old court of appeals, Judge Davies, in delivering the prevailing opinion in the well-known case of Caujolle v. Ferrie, 23 N. Y. 90, 108, used this language, not only in reference to the presumption, but the cogency of the evidence needed to overcome it:

"I have been unable to find any authority in this state, on a question of legitimacy, which requires the heir and acknowledged and conceded child

to prove an act of marriage as a requisite to maintain his legitimacy. The presumption and the charity of the law are in his favor; and those who wish to bastardize him must make out the fact by clear and irrefragable proof."

The evidence offered by the appellants to establish the alleged illegitimacy of the mother of the respondents consisted of testimony as to declarations in respect to the birth and parentage of Harriet Smith made by persons now deceased. This proof was received under the rule which makes such declarations admissible in regard to matters of pedigree, where they emanate from deceased persons connected by blood or marriage with the family of the person whose pedigree is under investigation. 1 Whart. Ev. (Ind. Ed.) §§ 208, 216; Eisenlord v. Clum, 126 N. Y. 552, 565, 27 N. E. 1024. Three of the four witnesses called to prove declarations of this kind were objecting parties in the present proceeding, and directly interested in the result. The testimony of the other witness (John H. Raynor), as set out in the record, is confused and contradictory. The declarations appear to have been made between 18 and 35 years ago. On the other hand, there was testimony from Mr. Seabury, the executor, indicating that Maryette Matthews, the testatrix, in her lifetime, recognized the respondents herein as persons who were lawfully related to her. Upon all the evidence, I think the acting surrogate was quite right in holding that the presumption of Harriet Smith's legitimacy had not been overcome.

The only other question presented by this appeal arises upon an exception to the refusal of the acting surrogate to receive testimony under a formal offer "to prove by the neighbors that Harriet Smith was illegitimate," which offer was accompanied by a statement from the learned counsel for the objectors that he was not prepared to say that such testimony was admissible. As I understand the offer, his doubts were well founded, and there was no error in the ruling.

The decree, so far as appealed from, should be affirmed, with costs to the respondents Smith. All concur.