**BRUNER et al. v. ENGELES et al.**

No. 11012—Opinion Filed Feb. 27, 1923.

(Syllabus.)

**1. Bastards—Presumption of Legitimacy.**

In controversies involving heirship and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency and morality and right living. Locust et al. v. Caruthers et al., 23 Okla. 373, 100 Pac. 520.

**2. Same.**

After a long lapse of time, where proof is given that certain persons are the children of a certain man and woman and were so recognized and treated by the parents and other members of the family, legitimacy will be presumed, even though there was no direct evidence of the marriage of the father and mother. Locust et al. v. Caruthers et al., 23 Okla. 373, 100 Pac. 520.

**3. Trial—Instructions — Incorrect Instructions.**

It is the duty of the trial court upon its own motion to correctly instruct the jury upon the issues made by the pleadings and the evidence, and the giving of incorrect instructions over the objections and exceptions of a party to the action, which were calculated to mislead the jury, constitutes reversible error.

**4. Same—Bastards—Presumption of Legitimacy—Reversal.**

Record examined, and held, that the trial court committed reversible error in instructing the jury, and that the judgment entered on the verdict of the jury be reversed and a new trial granted.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Paul Bruner and Pauline Bruner against Frank Engeles and Laura Engeles to establish interest in real estate, for possession and accounting. Judgment for defendants, and plaintiffs bring error. Reversed and remanded, with directions.

Pryor & Stokes, for plaintiffs in error.

Thompson & Smith, for defendants in error.

KENNAMER, J. On the 18th day of November, 1915, Paul Bruner and Pauline Bruner, plaintiffs, instituted this action in the district court of Creek county against Frank Engeles and Laura Engeles, defendants, to establish interest in 40 acres of land located in Creek county, allotted to Archie Bruner as his homestead allotment as a member of the Creek Tribe of Indians, and for the possession of an undivided one-half interest in the lands, and

for an accounting as to rents and profits. The plaintiffs asserted title to an undivided one-half interest in the lands, a one-fourth each. The decisive question in the case was whether Ben Bruner, deceased, the father of the plaintiffs, was a son of Archie Bruner, deceased allottee of the lands.

The defendants asserted title to the lands under a conveyance executed by Maggie O. Sheals, who it was admitted was a child of Archie Bruner. It was the contention of the plaintiffs in the case that Ben Bruner, the father of the plaintiffs, was the child of Archie Bruner and a woman by the name of Hattie. That Archie Bruner and Hattie entered into a valid marriage contract about 50 years ago according to the custom and laws of the Creek Nation applicable to Indian marriages, and that Ben Bruner was the legitimate child born to Archie Bruner and Hattie during the time they lived together as husband and wife. That on the death of Archie Bruner his allotment was inherited by Maggie O. Sheals, Paul Bruner, and Pauline Bruner, child and grandchildren of Archie Bruner, deceased; Ben Bruner, the father of Paul and Pauline Bruner, having died prior to the death of Archie Bruner, the allottee. The defendants contend that Ben Bruner was not the child of Archie Bruner. Also that if he was the child, he was an illegitimate child of Archie Bruner, for the reason Archie Bruner was never married to Hattie, the mother of Ben Bruner.

The cause was tried to a jury, which resulted in a verdict in favor of the defendants. Motion for new trial was overruled, and this appeal is prosecuted by the plaintiffs to reverse the judgment of the trial court. Objections were made to instructions numbered 1, 4, 5, and 6, which objections were overruled and exceptions allowed. Other objections and exceptions were made to other instructions which we deem it unnecessary to consider, as we have reached the conclusion that the case must be reversed for the errors committed in giving the instructions herein set out. The instructions above referred to as given by the court are as follows:

(1) "You are instructed, gentlemen of the jury, that if upon the evidence before you and the charge of the court you are unable to say that plaintiff has shown a better title than defendants have shown by their evidence, then the plaintiffs are not entitled to recover in this action and your verdict should be for the defendants."

(4) "You are further instructed that before you can find from the evidence in this case

that a marriage according to the Indian customs and usages was entered into by and between the said Archie Bruner and one Hattie, you must believe that the said Archie Bruner and Hattie had entered into an agreement to become husband and wife according to the Indian usages and customs and that in pursuance of such agreement to live together and cohabit as husband and wife, they must have held each other out to the public as husband and wife. Such agreement to become husband and wife may be express or implied. An express agreement is where the parties thereto expressly agree; an implied agreement is one where the conduct of the parties with reference to the subject-matter is such as to induce the belief that they intended to do that which their acts indicate they have done. If you believe from the evidence that the said Archie Bruner and Hattie did agree to become husband and wife and that in pursuance of an agreement to become husband and wife they lived together and cohabited as husband and wife, you will be justified in finding that a marriage according to the Indian usages and customs existed between the said Archie Bruner and Hattie; but you are further instructed that such cohabitation and living together must have been to the exclusion of any woman other than the said Hattie, and you are further instructed that the birth of a child may or may not have been evidence of such continued exclusive cohabitation, dependent upon the circumstances attending the particular case."

(5) "If, gentlemen of the jury, you find by a fair preponderance of the evidence that the said Archie Bruner and Hattie did contract the marriage relation under the usages and customs of the Creek Nation of Indians and did cohabit together to the exclusion of others and that Ben Bruner was the issue of said cohabitation, then the said Ben Bruner would, in law, be an heir of the said Archie Bruner."

(6) "If you fail to find from the evidence that a valid marriage under the usages and customs of the Creek Nation of Indians was contracted by and between said Archie Bruner and Hattie Bruner, even though you may also find from the evidence that Ben Bruner was in fact the son of said Archie Bruner and Hattie, yet the said Ben Bruner would not be an heir at law of the said Archie Bruner unless it has been proven to you that the said Archie Bruner did, in writing, signed in the presence of a competent witness, acknowledge himself to be the father of such child."

It is clear to us that instruction No. 1, from the evidence introduced and the theory of the plaintiffs in the action, was calculated to mislead the jury. The plaintiffs admitted that the defendant owned one-half interest in the land. Therefore, the defendants had an equal title with that of the plaintiffs, if in fact the plaintiffs owned the other one-half interest. The instruction should have advised the jury that the plaintiffs must recover their interest in the land, which they allege to be one-half, upon the strength of their own title, and not upon the weakness of the defendants' title. The instruction as given probably confused the jury, for the reason plaintiffs admitted defendants owned one-half the title, which would be equal to any other person or persons owning the other half, and under the instruction the jury may have concluded that under the admitted facts the plaintiffs were not entitled to recover even though they only had an equal interest with defendants in the land.

Instruction No. 4 fairly stated the law applicable to valid marriages according to the customs and usages of the Indians, except the latter part of the instruction, where the court advised the jury that Archie Bruner must have cohabited and lived with Hattie to the exclusion of any other woman, and that the birth of a child may or may not have been evidence of such continued exclusive cohabitation, dependent upon the circumstances attending the particular case. It is apparent that this latter part of the instruction was error, for the reason that Archie Bruner and Hattie once having entered into a valid contract of marriage and cohabited together, or commenced to live together with intentions of assuming the relation of husband and wife, and continued such relation, which resulted in a valid marriage according to the usage and customs of the Indians, the fact that one of them may have violated that relation after such marriage had been consummated would not invalidate the marriage or make it any less a valid marriage contract or affect the legitimacy of their child, Ben Bruner. Chaney v. Whinnery. 47 Okla. 272, 147 Pac. 1036; Coleman v. James, 67 Okla. 112, 169 Pac. 1064; Johnson et al. v. Dunlap et al., 68 Okla. 216, 173 Pac. 359; Johnson v. Johnson's Adm., 30 Mo. 72, 77 Am. Dec. 598

Instruction No. 6 advised the jury if it failed to find from the evidence that a valid marriage existed, but it found that Ben Bruner was in fact the son of Archie Bruner and Hattie, yet the said Ben Bruner would not be an heir at law of the said Archie Bruner unless it had been proven that Archie Bruner did in writing, signed in the presence of competent witnesses, acknowledge himself to be the father of such child,

The plaintiffs did not seek to recover in the action upon the theory that Archie Bruner had acknowledged in writing that Ben Bruner was his son, and there was no such issue in the case to be determined, and the effect of this instruction was to cast upon the plaintiffs the burden of proving that Ben Bruner was a legitimate child. Such instruction constituted prejudicial error, for the reason the jury, under the pleadings and the evidence, should have been instructed that if the plaintiffs had established the fact that Ben Bruner was the son of Archie Bruner, the presumption was in favor of the legitimacy of the child, and that the burden then would be upon the defendants to show that he was an illegitimate child. The rule has been uniformly adhered to by the courts that every child is presumed to be legitimate, and in the absence of evidence to the contrary, no proof of marriage of the parents is necessary.

In the case of Locust et al. v. Caruthers et al., 23 Okla. 373, 100 Pac. 520, this court, in the fourth and fifth paragraphs of the syllabus, held:

"In controversies involving heirship and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency and morality and right living.

"After a long lapse of time, where proof is given that certain persons are the children of a certain man and woman and were so recognized and treated by the parents and other members of the family, legitimacy will be presumed, even though there was no direct evidence of the marriage of the father and mother."

In Orthwein v. Thomas et al., 13 N. E. 564, the Supreme Court of Illinois held:

"The presumption that every child is the offspring of a lawful marriage, and that the mother, either by actual marriage or by cohabitation and recognition, was the lawful wife of the father, can only be rebutted by clear proof to the contrary, and disproving every reasonable possibility."

See Johnson v. Johnson, 30 Mo. 72; Johnson v. Johnson, 1 Desaus, 595, Sc. 1800; Strode v. Magowan, 65 Ky. (2 Bush) 621; In re Seabury, 1 App. Div. 231, 37 N. Y. Supp. 308.

In view of the authorities herein considered and the reasons given, the judgment of the trial court is reversed, and the cause remanded, with directions to grant the plaintiffs a new trial.

JOHNSON, V. C. J., and KANE, NICHOLSON, and BRANSON, JJ., concur.