### SMITH v. LINDSEY et al.

No. 11169—Opinion Filed May 15, 1923.

**1. Appeal and Error—Review—Findings—Evidence.**

Where a case is tried to the court without a jury, the finding of the court upon disputed questions of fact will be given the same weight and effect as the verdict of a jury, and, where reasonably supported by the evidence, will not be disturbed in the Supreme Court.

**2. Indians—Marriage—Evidence—Records.**

Upon the question of marriage or non-marriage, it is not error to admit in evidence a certified copy of the application for enrollment of an alleged child of the marriage, including the affidavit of the mother, filed with the Commission to the Five Civilized Tribes.

**3. Appeal and Error — Review—Conflicting Evidence—Indian Marriage—Legitimacy of Children.**

Where the questions of the marriage and the legitimacy of children are involved as the basis of plaintiff's right to recover, and the testimony as to the marriage is conflicting, and such as reasonable men would draw different conclusions therefrom, this court will not disturb the verdict of the jury or findings of fact by the court below.

**4. Indians — Marriage — Tribal Custom — Common Law.**

In the Indian Territory among the Five Civilized Tribes, since the act of Congress extending and putting in force the common law, where the tribal custom of marriage is shown to be in conformity with the same and not derogatory thereto, the marriage will be valid under the common law if not valid under the tribal custom.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error From District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Willie Lindsey and others against J. C. Smith. Judgment for plaintiffs, and defendant brings error. Affirmed.

Joseph C. Stone, Charles A. Moon, and Francis Stewart, for plaintiff in error.

Herbert E. Smith, for defendants in error.

Opinion by THREADGILL, C. This is an appeal from a judgment of the district court of Okmulgee county. The plaintiff in error, J. C. Smith, was the defendant in the court below and Willie Lindsey, Addie Lindsey, and Nora Lindsey, minors, by their guardian John Cordell, were plaintiffs below. In this decision they will be referred to as in the trial court.

The plaintiffs, by their guardian, commenced action against the defendant by filing a petition in the district court of Okmulgee county on the 3rd day of March, 1919, to recover possession of an undivided three-fifths interest in the S.W.¼ of section 9, township 18 north, range 11 east. They alleged that the said land was allotted to one Samantha Lindsey who was a full-blood Creek Indian. That the said Samantha Lindsey was the lawful child of Walter Lindsey and one Jemima Panter, by a marriage according to the manners and customs of the Creek Indians, as well as the common law. That they consummated the marriage in 1896 and said Samantha was born as the lawful issue of said marriage January 10, 1897. That after said marriage was consummated that Walter Lindsey and Jemima separated and were divorced according to the Creek customs and

Walter married one Hettie Lindsey and these plaintiffs are the children of this marriage. The said Jemima married one John Simmer after her separation from Walter and of this marriage two children were born, named Hinnie Simmer and Lillie Simmer, making these plaintiffs half-blood to the said Samantha Lindsey, the allottee, through their father, and Hinnie and Lillie Simmer half-blood to said allottee, through their mother. That the said allottee died intestate on or about September 3, 1911, without having been married and without issue and without father or mother surviving, but leaving these plaintiffs and Hinnie and Lillie Simmer of the half-blood to said allottee surviving. That the said defendant, J. C. Smith, at a guardian's sale six years before this suit was brought bought the interest of Hinnie and Lillie Simmer in said 160 acres of land; that he had taken possession of said land and was claiming it as sole owner and had occupied and possessed it for six years, when as a matter of fact he was the owner of only an undivided two-fifths interest therein and that the plaintiffs were the owners of an undivided three-fifths interest therein. Plaintiffs prayed judgment for possession of an undivided three-fifths interest in and to said land and for damages and for partition of said propery.

The defendant filed his answer, denying that the plaintiffs owned any interest in the property and denying that Jemima and Walter were ever husband and wife and that Samantha, the allottee, was their lawful child.

On the 30th day of July, 1919, the issues were tried to the court by agreement. The court found all the issues in favor of the plaintiffs and to reverse this judgment, the defendant prosecutes this appeal. There are ten assignments of error and the defendant (plaintiff in error) in his brief reduces and argues them under two subdivisions:

"First. The evidence is insufficient to sustain the judgment in favor of the defendants in error or to an interest in the lands involved.

"Second. Custom in the Creek Nation relative to marriage cannot affect parties residing in the Seminole country."

There is no doubt as to the relation of the two Simmer children; they are half brother and sister to the allottee, through their mother.

The plaintiff's right to recover is based upon their kinship to Samantha, the allottee. If Walter and Jemima lived and cohabited together as husband and wife under the tribal custom of the Creeks as well as the common law and Samantha was born as the offspring of this marriage, then these plaintiffs are half-blood to the allottee, through their father. The marriage of Walter and Jemima and the legitimacy of Samantha, the allottee, here brought into question lie at the basis of the right of the plaintiffs to recover. To constitute marriage there must be a contract, either express or implied; legitimacy is presumed. Bruner et al. v. Engeles et al., 88 Okla. 277, 213 Pac. 307; Locust et al. v. Caruthers et al., 23 Okla. 373, 100 Pac. 520; Orthweing v. Thomas (Ill.) 13 N. S. 564.

"But where the question of marriage is drawn in issue, and lies at the basis of plaintiff's right to recover, the plaintiff must establish the same by competent proof." Thompson et al. v. Smith et al., decided April 17, 1923 [Okla. pending on rehearing].

The defendant contends that the testimony adduced in the trial court to establish the marriage of Walter Lindsey and Jemima Panter was not sufficient to make out a case as alleged in the petition.

The plaintiffs in making out this case introduced witnesses who had been acquainted with Walter Lindsey and Jemima Panter at the time it is alleged they contracted the marriage.

Mitchell Hill testified that he was 37 years old, that he was born and raised at Yeager, about four and one-half miles from where Walter and Jemima lived. He knew Walter and Jemima while they lived and he remembered when they died; that Jemima died first, then Walter, and he knew Samantha. That he associated with Amos Lindsey, a brother of Walter, in the year 1896; that Jemima and Walter lived together at the home of Walter's mother, whose name was Hepsey. He saw Walter and Jemima together at the "storm dance". He heard Walter say that he was married. He heard several persons in that neighborhood talk about this marriage, and he testified that they separated and after the separation Walter married Hettie. This witness said he had been a member of the Creek council, the house of warriors, and he testified as to the custom of the Creeks in consummating marriage by going together and living together and separating by going apart and living apart.

Alford Goat was the next witness introduced. He was a full-blood Creek and in 1901 acted as interpreter before the Dawes Commission, and identified his signature to the birth affidavit of Samantha Lindsey made by her mother, Jemima Simmer, and he interpreted the oath made by the affiant and identified the affidavit and the signature

of the affiant by mark, as a certified photographic copy of said affidavit which was admitted as a part of the evidence.

Willie Sewell testified for the plaintiff and said he was 40 years old, a full-blood Indian, knew Walter Lindsey and Jemima in their lifetime and knew Samantha Lindsey, and that Walter and Jemima lived together at Walter Lindsey's mother's house about the year 1896. His mother was named Hepsey. That they lived together there as husband and wife, occupied the same room and same bed; that they went to the "storm dance" on one occasion and were out all night; the next morning they went back to the house and they occupied the same room and the same bed in the daytime. He says he was staying at his aunt's house, near where Hepsey lived at that time. He heard Walter say that Jemima was his wife and he understood that the community where Hepsey lived thought that Walter and Jemima were husband and wife. He knew about their separation and about Walter marrying Hettie and about Jemima marrying another man, and that Samantha was the child of Walter and Jemima and that they were all dead.

Joe Buck, a witness for the plaintiffs, testified that Walter and Jemima lived together and Samantha was their child and as to the Creek custom of marriage and divorce and the reputation of the marriage of Walter and Jemima in the neighborhood where they lived, and about their marriage and the children of the marriages and their deaths, and was acquainted with their family history. This witness even understood that Jemima's mother and Walter's mother consented for them to marry and said that the reason Walter quit living with Jemima was that she got drunk at a "storm dance."

Over against this testimony Will Foster, Lee McNebins, Louis Benden, and Watty Palmer, introduced on the part of the defendant, stated in substance there was no marriage according to Creek custom and usage, and it was commonly understood that Samantha was illegitimate, which was in conflict with the testimony of plaintiff's witnesses. It is true the witnesses on both sides were unlearned Indians and their language the language of untutored children, but the court trying the case had them all before him and could observe their demeanor on the witness stand and determine the weight of the testimony and the credit to be given to each one, and this court cannot say that the weight of the testimony was not with plaintiffs' witnesses, and under the well-established and oft-repeated rule of this court, will

not disturb the findings of the trial court. We have examined the case-made and the evidence therein contained, and after considering the able discussion in the briefs of both parties we are not prepared to say that there is not evidence which properly tends to support the findings of facts by the district court. We think under the plaintiffs' evidence the trial court was fully warranted in finding that Walter Lindsey and Jemima Panter entered into a marriage contract according to the customs and usages of the Creek Indians as well as under the common law, and that Samantha was the lawful issue of this marriage, and under the rule of this court, where the evidence is such, showing facts and circumstances that reasonable men might draw different conclusions therefrom, this court will not disturb the findings of facts as made by the court or verdict of jury trying the case. Reaves v. Reaves, 15 Okla. 240, 82 Pac. 490; Hartley v. Riley, 85 Okla. 101, 204 Pac. 920; Nelson v. Golden, 84 Okla. 29, 202 Pac. 308.

In addition to the verbal testimony introduced by the plaintiff was the affidavit made by Jemima Simmer when she was the wife of George Simmer, to the effect that she was the lawful wife of Walter Lindsey and Samantha was their child and was born on January 10, 1897; and this affidavit was made for the purpose of enrolling the said Samantha with the Dawes Commission and was filed with said commission as a public record.

And this court has held that the birth affidavit filed with the Commission to the Five Civilized Tribes, for the purpose of enrollment, is competent evidence on the question of an Indian marriage.

In Johnson et al. v. Perry et al., 54 Okla. 23, 153 Pac. 289, this court held:

"Upon the question of marriage or nonmarriage it was not error to admit in evidence a certified copy of the application for enrollment of an alleged child of the marriage, including the affidavit of the mother filed with the Commission to the Five Civilized Tribes."

In Perryman v. Sharp, 71 Oklahoma, 176 Pac. 526, this court held:

"A birth affidavit executed and filed in May, 1901, subsequent to the application for annulment as a Creek freedman and issuance of citizenship certificate, but prior to the transmission by the Commission to the Five Civilized Tribes of the schedule or partial roll containing the name of such citizen to the Secretary of the Interior for his approval, is held to be a part of the enrollment record."

In Linsey v. Jefferson, 68 Okla. 156, 172 Pac. 641, this court held:

"That the evidence tended to show that Walter Jefferson caused Senora to be enrolled as his daughter on the Creek Rolls and in connection therewith made two affidavits at different times in which he stated under oath that he was the husband of Annie Jefferson, deceased, and that Senora was the fruit of this union. Much more testimony of the same import was introduced, but this is sufficient for the purpose of this opinion."

In Page v. Adkins, 86 Okla. 290, 208 Pac. 807, this court held that the entire enrollment record is competent testimony to identify and fix the status of members of the Indian tribes.

The defendant next contends that the marriage customs and usages of the Creeks could not be claimed by parties residing in the Seminole Nation.

This might be true in a jurisdiction where the common law was not in force, but where the common law is in force and the Indian custom and usage, as to marriage, are in conformity with the common law, the customs and usages of the Indian Tribes should be recognized in consummating marriage.

The court will take judicial knowledge that the common law was in force throughout the Five Civilized Tribes in 1896 and the Creeks and Seminoles were two of the said tribes. The facts proven by the plaintiffs under Creek custom and usage are sufficient to show a common-law marriage. If the parties lived together, occupied the same room and bed, and held themselves out to their friends as husband and wife, then a marriage contract is presumed, and it is the contract that fixes the marriage status. It would make no difference whether Walter and Jemima made their agreement under the Creek custom and usage or under the common law, if the trial court believed from the testimony that they lived and cohabited together and held themselves out to their friends as husband and wife the court would be warranted in so finding. In Lindsey v. Jefferson, supra, this court holds:

"Marriage may be proven by circumstantial evidence, and since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited together as husband and wife for a considerable time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who came in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there may be no direct testimony to that effect."

This is especially true where the legitimacy of children is involved.

This court, in the case of Bruner et al. v. Engeles et al., 88 Okla. 277, 213 Pac. 307, following the rule in Locust et al. v. Caruthers et al., 23 Okla. 373, 100 Pac. 520, said:

"In controversies involving kinship and the legitimacy of children, the presumption of law is in favor of legitimacy, and the reason back of this presumption is that the law encourages decency and morality and right living * * * After a long lapse of time, where proof is given that certain persons are the children of a certain man and women and were so recognized and treated by the parents and other members of the family, legitimacy will be presumed, even though there is no direct testimony to that effect." Chancey v. Whinnery. 47 Okla. 272, 147 Pac. 1036; Coleman v. James. 67 Okla. 112, 169 Pac. 1064; Johnson v. Johnson's Adm'r, 77 Am. Dec. 598.

We think the testimony is sufficient to show a marriage contract between Walter Lindsey and Jemima Panter and that Samantha is the legitimate child of this marriage.

The judgment of the court below is affirmed.

By the Court: It is so ordered.