WHITE v. ANDERSON.

No. 35108. Nov. 12, 1952.

Rehearing Denied Dec. 9, 1952.

*250 P. 2d 873.*

Mary Stephenson and Lee Gill, Oklahoma City, for plaintiff in error.

Bruce & Rowan, Oklahoma City, for defendant in error.

CORN, J. This is an appeal from a judgment and order of the district court of Oklahoma county, after trial de novo, denying the application of Rexie L. White, plaintiff in error, for letters of administration of the estate of Lula B. Anderson, deceased, and granting letters to Willie Anderson, the defendant in error.

The issue for determination in the trial court was which of two claimants was entitled as a matter of statutory preference to letters of administration of the estate of the decedent, who died intestate in Oklahoma county, February 28, 1950.

Rexie L. White is the decedent's nephew. He applied to the county court for letters of administration. Willie Anderson objected to his appointment claiming to be the half-brother of the decedent by a common father, and, as such, entitled to preference over a nephew, and asked that letters of administration issue to him.

The county court, after a hearing, ordered that letters issue to Willie Anderson, and the district court affirmed the order after trial de novo.

The alleged common ancestor of the conflicting claimants is Henry Anderson, a negro, who lived in Graves county, Kentucky, and died there about 1874. Henry Anderson married Emily Anderson, nee Dunbar. Two children, Lula B. Anderson, the decedent, and Leona Anderson, who is also deceased, were born of the marriage. Leona, the younger of the two children of Henry and Emily Anderson, married Will White, and Rexie L. White, the plaintiff in error, is the child of that marriage.

Willie Anderson, defendant in error, is the son of Martha Overby, who also lived in Graves county, Kentucky, and died there about 1918. He says that his father was the same Henry Anderson, who was also the father of Lula and Leona. He claims that he is a brother of the half-blood of Lula, the decedent, and that, therefore, he is one of her heirs, and by reason of his relationship to her, entitled to letters of administration of her estate in preference to her nephew.

Plaintiff in error claims that, if the fact be that defendant in error, Willie Anderson, is the putative son of Henry Anderson, he was born out of wedlock and is not an heir of Lula B. Anderson, the decedent, who is the legitimate child of the man Willie claims to be his father.

The evidence shows that Willie Anderson was born about 1870 and Lula B. Anderson was a few years younger and that she is his half-sister. There is no direct proof that Henry Anderson, Willie's father, was married to the mother of Willie. These people are negroes born in Kentucky, to parents who were slaves. During those days no record was kept of the marriage of slaves. It appears from the record that the only proof of marriage was when they (man or woman) lived together and were generally known in the community as husband and wife. When they separated and took up with some one else and held themselves out to the world as husband and wife, that was recognized by the laws of the various slave states as legal marriage.

After the birth of Willie Anderson, his father, Henry Anderson, later took up with the mother of Lula B. Anderson and thereafter Lula B. Anderson was born. There is no proof that Henry Anderson was married to either the mother of Willie Anderson or the mother of Lula B. Anderson. The evidence does show that Willie Anderson and Lula B. Anderson were recognized and generally known in the community in Kentucky in which they were born and reared as the children of Henry Anderson. Henry Anderson recognized both Willie Anderson and Lula B. Anderson as his children. During the long period of time that Willie Anderson and Lula B. Anderson went to school together as children they were recognized in public school as brother and sister. Lula B. Anderson recognized Willie Anderson as her brother in letters written by her to him and Willie recognized Lula B. Anderson as his sister all the way through childhood and all the time in their later life. They came to Oklahoma in 1894 as brother and sister. They lived in the house together as brother and sister until 1920. All the property involved in this action was accumulated by Lula B. Anderson after she came to Oklahoma.

On cross-examination of Willie Anderson, the following questions were asked and answers given:

"Q. According to the reputation of all these families I have referred to, as you understand it in Kentucky and down through the years, was Henry Anderson married to Martha Overby? A. Yes.

"Q. What do you base your statement on that Lula B. Anderson is your sister? A. My mother said that Henry Anderson was my father.

"Q. How old were you when your mother, Martha Overby, told you that? A. From the time I was big enough to know anything; as long as I was around her.

"Q. What would she say to you when she would tell you that? A. She would tell me who my father was. We didn't discuss it much. I didn't have a father, in a way. He had passed.

"Q. The only statement she would make to you was, 'Henry Anderson is your father?' A. Yes, that is pretty near the last word she told me. I was back there in 1906, and she told me.

"Q. Henry Anderson lived and died in Kentucky? A. Yes. When I got large enough, I went to the cemetery and they specified that is where my father was buried. I didn't know who it was that showed me but I was there."

In Bruner v. Engeles, 88 Okla. 277, 213 P. 307, we held in the second paragraph of the syllabus:

"After a long lapse of time, where proof is given that certain persons are the children of a certain man and woman and were so recognized and treated by the parents and other members of the family, legitimacy will be presumed, even though there was no direct evidence of the marriage of the father and mother."

After an examination of the entire record, we are of the opinion that the testimony of Willie Anderson, when considered with all the other facts and circumstances reflected by the record, is sufficient to sustain the judgment rendered by the trial court, as not being against the clear weight of the evidence.

Judgment affirmed.

HALLEY, V. C. J., and WELCH, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.