UNION PETROLEUM CO. et al. v. OKLAHOMA, N. M. & P. RY. CO.

No. 14464—Opinion Filed Oct. 27, 1925.

Rehearing Denied Jan. 19, 1926.

(Syllabus.)

1. Fraud—Actionable Fraud — Sufficiency of Petition on Demurrer.

The plaintiff predicated its cause of action against the defendants upon fraud resulting in its damage in the sum for which suit was brought. The petition pleaded material misrepresentations, plaintiff's reliance thereon, and the resulting damage to plaintiff by reason thereof. Such petition was invulnerable to a demurrer on the ground that the same failed to plead a cause of action.

2. Same—Limitation of Action — Time of Discovery of Fraud.

Plaintiff's petition showed on its face that the fraud on which it predicated its cause of action resulted from misrepresentations made to its agent in the autumn of 1918, but it affirmatively pleaded that it did not discover this fraud until November, 1920. The instant action was instituted in April, 1922. The defendants filed demurrer to plaintiff's petition on the ground that the cause of action alleged was barred by the statute of limitations under section 185, C. O. S. 1921. Held, that since the petition affirmatively pleaded that plaintiff did not discover the fraud until November, 1920, its suit having been brought within 2 years thereafter, there was nothing on the face of the petition which disclosed the bar of the statute of limitations, and the demurrer to the petition on this ground was properly overruled.

3. Appeal and Error—Necessity for Objections Below—Theory of Case — Concession of Facts as Obviating Evidence.

Where evidence of a fact which is capable of proof was not produced in the trial of a cause, in which such fact was a material element to the right of the plaintiff to the recovery obtained, because the same was tacitly conceded, and the cause tried on the theory that if plaintiff established facts warranting a recovery, the amount of the recovery should be the amount prayed, the defendant cannot raise the failure to produce such proof as ground for reversal for the first time in this court.

4. Appeal and Error—Burden of Showing Prejudicial Error — Admission of Evidence.

Where a defendant, as plaintiff in error,

seeks the reversal of a judgment obtained against him on the ground of admission of incompetent evidence,. he has the burden of showing that such evidence so admitted over his objection was not only incompetent, but prejudicial, and on his failure to do so, this court will not reverse the judgment on such assignment.

### 5. Same — Erroneous Instruction — Harmless Error.

Where the losing party seeks to reverse a judgment of a trial court on the ground of an erroneous instruction, it must appear that the same misled the jury to his prejudice, resulting in a miscarriage of justice, or constitutes a substantial violation of a statutory or constitutional right.

Record in the instant case examined as to the instruction urged by the plaintiff in error as erroneous, and held, that it fails to appear that the same in any wise con used the jury or worked a miscarriage of justice. Judgment is affirmed.

Error from District Court, Carter County; Thos. W. Champion, Judge.

Action by the Oklahoma, New Mexico & Pacific Railway Company against the Union Petroleum Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Mason & Honnold, Moore & West, L. G. Williams, and M. H. Merrill, for plaintiffs in error.

Silas L. Egly and Keaton, Wells & Johnsion, for defendant in error.

BRANSON, V. C. J. The judgment of the lower court in this cause was in favor of the plaintiff. The plaintiff was the Oklahoma, New Mexico & Pacific Railway Company, a corporation. The cause was tried to a jury, resulting in a verdict in the sum of $7,068.98, which the trial court approved, and on which it entered judgment. The issue as presented by the plaintiff's petition was fraud to its damage in the sum recovered. The alleged facts charged were in substance and intendment as follows, to wit:

The defendant Union Petroleum Company, a corporation, was represented in Carter county by its agent, one Cook. The said Cook was also in control of the Ardmore Producing & Refining Company, a corporation, the business of which was refining petroleum products, and marketing the same. Among other things marketed by the last-named corporation, was gasoline. Among its purchasers of gasoline was the Universal Petroleum Company, a corporation of Tulsa, Okla., which last-named company, for the purpose of purchasing gasoline from the said Ardmore Producing & Refining Company, carried with said company a large cash balance, which by understanding gasoline shipments made to it or its order were to be charged. In the autumn of 1918, the said Universal Petroleum Company had a balance with the said Ardmore Producing & Refining Company far in excess of an amount sufficient to pay for the gasoline hereinafter mentioned. Said Producing & Refining company delivered to the plaintiff as a common carrier, for which five bills of lading were received, billed at the instance of the Universal Petroleum Company, five cars of gasoline, the originals of the five bills of lading being delivered by the plaintiff carrier to the Ardmore Producing & Refining Company, which in turn were mailed by it to the Universal Petroleum. Company at Tulsa, Okla. The said Universal Petroleum Company in turn sold said bills of lading to the Fred G. Clark Company, for value.

The said Cook, agent as aforesaid of the Union Petroleum Company, in control as aforesaid of the Ardmore Producing & Refining Company, directed that duplicates of the bills of lading with sight draft to the value of said cars attached be sent for collection through the American National Bank of Tulsa, Okla., on the Universal Petroleum Company. The Universal Petroleum Company did not honor said draft, for that it was not in accordance with the aforesaid agreement to charge shipments against deposit on hand with the said consignor. On the pretext that the Universal Petroleum Company had failed to pay for the five cars of gasoline by honoring the drafts made for the same, and therefore was refusing the shipment, the said Cook, in control as aforesaid of, and for, the Ardmore Producing & Refining Company, directed one Kinman, representing the plaintiff carrier, to divert said cars of gasoline to the defendant Union Petroleum Company, at Chicago, Ill. To secure said diversion, he represented to the said Kinman the substance of the facts as above set out, as to the refusal of the Universal Petroleum Company to pay for said gasoline. Relying on the representations of the said Cook, agent of the defendant Union Petroleum Company, that the said Universal Petroleum Company had refused payment, and that the original bills of lading would be returned to the Ardmore Producing & Refining Company, and delivered to the plaintiff, he caused the said five cars to be

diverted from their original consignment to the Union Petroleum Company, which said company received said five cars of gasoline to its own use and profit.

The said Kinman, sometime thereafter, closed his file relative to said shipments, and the same apparently was not called to his attention again until sometime in November, 1920, at which time the said Fred G. Clark Company, as purchaser in good faith of the original bills of lading, so mailed as aforesaid by the Ardmore Producing & Refining Company to the Universal Petroleum Company of Tulsa, sued the plaintiff carrier for the sum of $7,068.98, which suit plaintiff pleaded presented its first-hand information of the fraud of the defendant Union Petroleum Company and the defendant Cook in securing the said diversion of the cars of gasoline.

It further appears that at the time of his machinations incident to securing the said diversion, the said defendant Cook well knew that the Ardmore Producing & Refining Company was wholly insolvent; that the said company had induced the Union Petroleum Company of Chicago, sometime theretofore, to advance the sum of $50,-000 to them, for which the said Union Petroleum Company had up to that time received no shipments of gasoline. It further appears that within three days after securing of the diversion of said cars of gasoline, the said Cook had caused the Ardmore Producing & Refining Company to be adjudged insolvent, and himself appointed receiver thereof, and later appointed trustee in bankruptcy. The liability of the plaintiff to the Fred G. Clark Company, assignees of the original bills of lading of said cars of gasoline, being clearly established, the plaintiff paid its claim, and took an assignment of all of its rights. This briefly states the facts.

Plaintiff's position and theory, as clearly apparent from its petition, which is rather lengthy, is that there was actual fraud perpetrated upon it, to its damage, in the said sum, in that material misrepresentations had been made to it, resulting in its otherwise unwarranted action in diverting the gasoline; that it relied upon the said misrepresentations, and that the consequent damages were the amount it was forced to pay the Fred G. Clark Company.

The evidence in the case on the material issues was somewhat in dispute, but the verdict of the jury resolved the disputed questions of fact in favor of the plaintiff.

To reverse the judgment, the defendants make several assignments, some of which are argued in their briefs; the others must be considered as waived. Demurrers were filed to plaintiff's petition apparently on two grounds: First, for its alleged failure to state a cause of action; and second, because, as the defendants contended, the petition showed on its face that if any cause of action ever existed in its favor, it had been stricken down by the statute of limitations. The assignment, and argument based thereon which seeks a reversal on these grounds is untenable. The petition states facts constituting a cause of action in tort, by reason of fraud, material, relied upon, and damage resulting. The petition affirmatively pleads that the plaintiff was not conversant with the said fraud until November, 1920, when it was sued by the said Fred G. Clark Company. The instant suit was brought within less than two years thereafter. This takes the case, if the facts pleaded were true, out of the bar of section 185, C. O. S. 1921, and the subdivision thereof, which the defendants present in their argument.

Again, the defendants contend, in effect, that the plaintiff, after the Fred G. Clark Company suit was filed, paid said company, and secured from it an assignment of its rights of action against the defendants herein, and that the Clark Company well knew, long prior to the time it filed its suit against the plaintiff as aforesaid, of the alleged fraud, and its knowledge is binding on its assignee, the plaintiff herein, citing in support thereof, among other authorities, 25 Cyc. 1009-10 (note); Adams v. San Antonio Life Ins. Co. (Tex.) 185 S. W. 610. The authorities cited have as little bearing on the limitation statute urged as the second contention, above epitomized, is efficacious in making plaintiff rely upon a supposed cause of action obtained by the assignment from the Fred G. Clark Company. The plaintiff pleaded no such cause of action, and in no wise undertook to secure relief on anything or alleged anything, the assignment from the Clark Company might have conveyed to it. The right which plaintiff pleads is made too plain by its petition to be unintentionally misunderstood.

Again, the defendants argue that there was insufficient evidence to support the verdict of the jury. The argument is supposedly based upon the assignment that the court erred in not sustaining the motions of the defendants for an instructed verdict.

We do not feel called upon to recite in

this opinion the evidence pro and con, which went to the material elements of actionable fraud which plaintiff had pleaded, but think it sufficeth both to counsel and defendants, who must need be conversant with the record in the instant case, to say that there was ample competent evidence to sustain the elements of fraud for which plaintiff contended, if the jury believed that evidence. Apparently the jury believed it, for it returned a verdict in favor of a railroad company.

Again, the defendants contend that there is a total want of evidence on the amount of damages sustained by the plaintiff, if any. No one can read the record in the instant case and avoid the conclusion that all parties, including the trial court, treated the case on the conceded assumption that if there was shown a right of recovery on the ground of fraud, the amount of recovery was the amount prayed by the plaintiff. The case apparently proceeded on this idea on behalf of the plaintiff, and the defendants, until the close of the plaintiff's evidence, and at this time defendants did not specifically object to the sufficiency of the evidence, because they had not gone into the **amount** of damage, and to permit them now to urge the lack of evidence of the amount paid to the Fred G. Clark Company, which could have been easily shown, and was inferentially shown by the evidence, to reverse this action, would be to permit the defendants to indulge in a sharp practice on the trial court.

Among its instructions, the court told the jury:

"Thereafter, to wit, on the 20th day of November, 1920, the Fred G. Clark Company, which company had in good faith purchased the five original bills of lading from the Universal Petroleum Company, and paid therefor the sum of $7,068.98, sued the plaintiff herein for said sum, and that the plaintiff has paid said Fred G. Clark Company said amount and is now the owner of the rights of the said Fred G. Clark Company."

No objection or exception was taken by the defendants to this instruction. One Cox, plaintiff's auditor, testified, in effect, that after a detailed and thorough investigation, and a presentation of the facts to plaintiff's attorneys, plaintiff was advised that it was liable to the Fred G. Clark Company, and it therefore made settlement.

On all fours with the contention here made, was one raised in the case of Hol-brook v. Wight (N. Y.) 24 Wend. 169, 35 Am. Dec. 607, and the court of that state said:

"It is said there is no evidence in the case that the plaintiffs had either accepted or paid the drafts. There is not indeed any direct evidence; but the fact of acceptance was assumed throughout the trial. The judge referred to it in his charge to the jury. It is strange, if such a material fact were out of the case, that it was not mentioned as an objection, and made a point."

It seems to be settled, and certainly at least should be settled, that where evidence of a fact capable of proof was not offered in the record because the fact was tacitly and fully conceded, it is too late to raise such a question for the first time on appeal. Selby v. Detroit Rwy. Co. (Mich.) 81 N. W. 106.

This being the situation, counsel cannot change their theory on appeal. Bullen v. Arkansas, V. & W. Ry. Co., 20 Okla. 819, 95 Pac. 476; Harris v. First Nat. Bank, 21 Okla. 189, 95 Pac. 781; St. Louis & San Francisco Ry. Co. v. Key, 28 Okla. 769, 115 Pac. 876.

Again, the defendants contend that the statute of limitations barred the cause of action on the disputed questions of fact as to when the alleged fraud became known to the plaintiff. On the allegations of plaintiff's petition that it did not know of the fraud until after the Clark Company's suit was brought, and the denial by the defendants thereof, an issue was raised which was to be resolved by the evidence introduced. There was evidence on the subject presented by the plaintiff which, if the jury believed, was sufficient to support its verdict, which verdict impliedly found that the plaintiff was not advised of the fraud until the Clark Company's suit was instituted. This was an issue of fact, and where there is evidence reasonably tending to support the same, its credibility is for the jury, and not for the court.

Again, the defendants urge that certain evidence was admitted over their objection, which was incompetent and prejudicial. The evidence complained of goes to part of the conversation between the representative of the plaintiff and the defendant Cook, out of which grew the order by the plaintiff, through its said agent, to divert said cars of gasoline. There are no authorities cited by the defendants to show the incompetency of this evidence and the argument presented as against its admissibility does not appeal to us as persuasive. On the contrary, it was merely one of the incidents evidential of fraud on which the plaintiff relied.

Again, the defendants object to the 8th instruction as given by the court, which instruction, after a brief resume of the case on behalf of the plaintiff, advised the jury, in effect, if it believed the defendant Cook, **individually** or as the **agent** of the Union Petroleum Company, practiced the fraud complained of, the defendants would be liable. The point particularly urged is that if Cook **individually** did it, as recited in the instructions, that might make the company for which he was agent liable for his actions **individually**. The plaintiff was suing both Cook and the company which he represented. We cannot perceive that the jury could be misled to defendants' prejudice by this instruction otherwise without demerit.

The judgment of the trial court is affirmed.

NICHOLSON, C. J., and HARRISON, MASON, PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 27 C. J. p. 30, § 146. (2) 37 C. J. pp. 1208, 1209 (Anno), § 711. (3) 3 C. J. pp. 735, § 629; 737, § 631. (4) 4 C. J. p. 913, § 2881. (5) 4 C. J. pp. 1029, § 3013; 1173, § 3202.