## TROUP v. HINE.

No. 17438—Opinion Filed Nov. 30, 1926.

**1. Contracts—Deeds—Burden of Proof of Fraud in Execution.**

In cases where fraud is alleged in the procuring of the execution of written instruments, or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions.

**2. Appeal and Error—Review—Conclusiveness of Findings on Conflicting Evidence.**

Where a case is tried to the court without a jury, the finding of the court upon disputed questions of fact will be given the same weight and effect as the verdict of the jury, and, where reasonably supported by the evidence, will not be disturbed in the Supreme Court.

**3. Mortgage — Validity — Mere Inadequacy of Consideration.**

Mere inadequacy of consideration is not sufficient to justify a court of equity in setting aside a mortgage regularly executed. In such case the mortgagor must bear the loss, as the court cannot contract for the parties.

**4. Appeal and Error—Burden to Show Prejudicial Error—Rulings on Evidence.**

Where defendant, as plaintiff in error, seeks reversal of a judgment obtained against him on the ground of admission of incompetent evidence or in rejecting certain offered testimony, he has the burden of showing that such evidence so admitted or rejected resulted in substantial injury or injustice to him, and on his failure to do so the Supreme Court will not reverse the judgment on such assignment.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Muskogee County; Enloe V. Vernor, Judge.

Action by T. S. Hine against C. J. Troup to recover certain mortgage indebtedness. Judgment for plaintiff, and defendant appeals. Affirmed.

H. T. Walker, for plaintiff in error.

S. E. Gidney, for defendant in error.

Opinion by FOSTER, C. On the 11th day of March, 1925, the defendant in error, T. S. Hine, as plaintiff, brought an action in the district court of Muskogee county against the plaintiff in error, as defendant, to recover upon a promissory note in the sum of $500, and for the foreclosure of a real es-

tate mortgage securing same. Parties will be hereinafter referred to as they appeared in the trial court.

The note was, by the plaintiff, alleged to have been executed on the first day of November, 1922, due and payable November 1, 1924, with interest atthe rate of 8 per cent. per annum, and, 10% of the entire amount as attorney's fees, if placed in the hands of an attorney for collection, and that at the same time and as part and parcel of the same transaction the defendant executed and delivered a mortgage covering certain real estate in the incorporated town of Taft in Muskogee county to secure said note, and prayed judgment for the amount of said note, interest, and attorneys' fees, and for the sale of real estate covered by said mortgage in satisfaction of said judgment.

The answer of the defendant admitted the execution and delivery to the plaintiff of said note and mortgage, but alleged that the same time and as part and parcel of the same duct on the part of the plaintiff in falsely representing to the defendant that a certain farm purchased by him from the plaintiff for which the said note and mortgage had been executed in part payment was good farming, tillable land, containing 110 acres in cultivation, and that all of said land could be put in cultivation, and that relying upon the representations so made by the plaintiff defendant purchased the land without viewing it; that afterwards he went upon the land and found that it contained not over 40 acres in cultivation, and that not more than 10 or 15 acres additional could be placed in cultivation, and that by reason of the fraud so practiced by the plaintiff he was not entitled to recover, and that the contract of sale and the note and mortgage should be cancelled, set aside, and held for naught.

After judgment had been finally rendered in the action, defendant filed an amended answer claiming that the plaintiff further misrepresented said land to be of the value of $40 per acre, and also incorporated therein a cross-petition claiming damages for the false and fraudulent representation of the plaintiff in sum of $3,900, being the alleged amount of the difference between the value of the land as represented and its actual value at the time of the sale on November 1, 1922.

No action was taken by the trial court upon the asserted claim by the defendant of right to recover damages claimed in the cross-petition incorporated in his amended answer, and this part of the pleadings may be disregarded in further consideration of the case.

Upon the filing of a reply by the plaintiff the cause proceeded to trial before the court without the intervention of a jury, a jury, by stipulation of the parties, being waived, resulting in a judgment in favor of the plaintiff on the note and for the foreclosure of the mortgage securing it.

From this judgment and from an order overruling his motion for a new trial, the defendant appeals to this court for review, claiming that the judgment is not supported by the evidence and is contrary to law. The first proposition urged by the defendant under his general claim that the evidence was insufficient to sustain the judgment is that the execution of the note and mortgage was obtained by misrepresentation and fraud.

We are in entire agreement with the various authorities cited by the defendant in his brief defining the elements of actionable fraud and announcing the general doctrine that courts of justice will not sanction the enforcement of contracts or obligations procured by the fraudulent conduct of a party thereto.

The record in the instant case, however, discloses a substantial conflict in the evidence as to whether the plaintiff was guilty of the fraudulent conduct charged in the answer of the defendant. It was the theory of the plaintiff, and he so testified, that when the trade was finally closed on the first day of November, 1922, defendant stated to him that he had already inspected the land and that he purchased it and executed the note and mortgage in controversy as part payment therefor, not in reliance upon anything the plaintiff may have said concerning the land but in reliance upon his own judgment, and that all of the negotiations prior thereto between the parties had been conducted upon the theory that the defendant would himself visit the land and verify the acreage in cultivation for himself. It is not disputed that the negotiations for the purchase of the land had been going on for some six months during which time the defendant, who was himself a real estate dealer of considerable experience, had seen the plaintiff about the transaction repeatedly, and defendant testified that he had contemplated going to view the land but abandoned the trip because he found out that it would be necessary to cross a mountain to get to it.

While defendant in his testimony denied that he had seen the land prior to the sale on the first day of November, 1922, he ad-

mitted that plaintiff, sometime prior thereto, requested him to view the land for himself. He admits that he omitted to visit the land prior to the sale because he learned that it was difficult to find, on account of the mountainous country it would be necessary to cross to reach it, so that there was a direct conflict in the evidence as to whether the defendant purchased the land and executed the note and mortgage in controversy in reliance upon his own judgment or in reliance upon plaintiff's representations.

Furthermore, if the testimony of the plaintiff is to be believed, the nature of the alleged representations as to the character of the land was not such as to convey to the defendant the impression that they were representations upon which he would have a right to rely, but merely the unverified information which the plaintiff had received from a third party, plaintiff testifying that he stated to defendant in this connection that he had merely been informed by a former tenant of his that about 110 acres of land had been cleared and that they had agreed to put 90 acres in cotton and 20 acres in corn, so that there was a direct conflict in the evidence as to the making of any fraudulent representations by plaintiff.

Defendant testified that after purchasing the land and without viewing it he placed a renter on it, and afterwards, when he found out the land was not as represented, he notified the tenant to pay the rent to the plaintiff. Plaintiff testified, however, that in a conversation with defendant's renter, had in the autumn of 1923, he was informed by said renter that defendant had employed him to do some fencing and clearing on the farm and that he was then claiming a lien upon defendant's share of the crop to secure the amount due him for this work.

The record does not contain the testimony of defendant's renter and plaintiff's evidence on this phase of the case is therefore uncontradicted. Furthermore, it is conceded that the defendant took no steps to cancel the alleged fraudulent contract and mortgage until after the plaintiff had instituted his action for the foreclosure of said mortgage indebtedness, a period of about three years after the discovery of the alleged fraud.

When the entire record is reviewed, the evidence appears to be unsatisfactory upon many vital issues in the case. The general rule is that where fraud is alleged in procuring the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions. Washington et al. v. Morton, 90 Okla. 142, 216 Pac. 457.

We cannot say, under the state of the evidence as disclosed by the record, that the fraud relied on by the defendant in the procuring of the note and mortgage sued on in the case at bar has been established by a preponderance of the evidence so great as to overcome all opposing evidence and to repel all opposing presumptions. There is no showing that any confidential relations existed between the plaintiff and the defendant which were abused in any manner by the plaintiff, but all of the evidence tends to show that they were dealing with each other at arm's length and on terms of equality, both parties being business men of many years' experience.

Fraud is never presumed but must be established by clear and convincing evidence. The trial court sitting as a jury in the trial heard the testimony and had a better opportunity to determine the truthfulness of the statements of the witnesses than this court could have under any circumstances. It heard the testimony and resolved the disputed questions of fact in favor of the plaintiff, and its finding thereon will not now be disturbed here. Downey v. Broesamle, 91 Okla. 81, 215 Pac. 1055; Smith v. Lindsay et al. 91 Okla. 81, 215 Pac. 791; Smith v. Maud Oil & Gas Company, 100 Okla. 235, 229 Pac. 190; Howerton v. Joplin Supply Co., 105 Okla. 171, 232 Pac. 104.

Some evidence was admitted tending to show that the actual value of the land on November 1, 1922, was disproportionate to the contract price of $40 agreed to be paid, but if the trial court, under the conflicting evidence before it, was justified in its conclusion that no actionable fraud was practiced by the plaintiff upon the defendant and that the defendant actually received what he bargained for, the mere inadequacy of the consideration will not be held sufficient to justify the court in cancelling and setting aside the note and mortgage.

As was said by this court in Washington et al. v. Morton, supra:

"Inadequacy of consideration is not sufficient to justify a court of equity in setting aside a deed regularly executed, much less a failure to pay the purchase price. In the former case, the vendor must bear the loss, as the court cannot contract for the parties; while in the latter case, he may sue and recover it."

Defendant complains of error in the trial

court in rejecting certain testimony and in receiving incompetent and immaterial testimony over his objection.

It is not pointed out in the brief of the defendant how or in what manner the rejection or reception of the testimony complained of operated to his prejudice or in what manner the court was affected thereby in rendering its judgment, and in the absence of such a showing error will not be presumed, and unless it is affirmatively made to appear that the reception or rejection of such testimony resulted in substantial injury to the complaining party, the judgment must be affirmed. Security National Bank v. Martin, 113 Okla. 295, 241 Pac. 812: Union Petroleum Co. v. Okla. N. M. & P. Ry. Co., 114 Okla. 21, 242 Pac. 1027; L. E. Harmon & Son v. Majors. 51 Okla. 776, 152 Pac. 450; Maupin v. Binion, 100 Okla. 32, 227 Pac. 390.

Upon a careful consideration of the entire record we conclude that the judgment of the trial court was correct and the same is hereby affirmed.

By the Court: It is so ordered.