MEAD v. HELLAMS.

No. 32919. May 11, 1948.

Rehearing Denied June 8, 1948.

*194 P. 2d 603.*

Chas. D. Scales, of Oklahoma City, for plaintiff in error.

O. A. Cargill, James R. Eagleton, and O. A. Cargill, Jr., all of Oklahoma City, for defendant in error.

WELCH, J. Plaintiff in his petition alleged that on September 25, 1945, he entered into a written contract and agreement with the defendant to do certain described items of repair work upon certain described property belonging to the defendant, for a total sum of $475; that he performed all of the conditions of the contract and had made demand upon plaintiff for the sum agreed upon and had not been paid; that he filed a proper notice of lien claim for the services performed and the materials furnished.

Defendant, in her answer, denied the execution of a written contract and stated that she employed plaintiff to

repair her property, but plaintiff failed to complete and properly perform the work for which he was employed, and was not entitled to such sums as claimed by him. Defendant further stated that plaintiff had failed to comply with regulations of the Office of Price Administration and asserted that for this reason his claim for services performed and materials furnished was not enforceable.

Evidence was presented showing that plaintiff and defendant entered into an agreement under which plaintiff was to make certain repairs to defendant's house for the sum of $475; that plaintiff furnished materials and labor and made such repairs and had not been paid and that plaintiff filed a lien statement against the property of defendant.

Judgment was rendered for plaintiff in the amount sued for and for attorney's fee and costs, and for foreclosure of the lien. Defendant appeals.

All assignments of error are presented under four propositions:

Defendant contends the court erred in overruling demurrer to plaintiff's evidence in the absence of proof that plaintiff had complied with the Federal Emergency Price Control Act.

The first proposition submitted by defendant reads as follows:

"A demand for price of lump-sum construction job is unenforceable, in absence of proof by contractor that he had established maximum price for such lump-sum job in accord with any of the alternative methods defined in maximum price regulation promulgated under Federal Emergency Price Control Act of 1942 as amended by Stabilization Act of 1942, 50 U. S. C. A. Appendix, Pars. 901 et seq., 961 et seq., R. M. P. R. 251, filed 7 F. R. 8878; 8 F. R. 3628, 9334."

The Federal Emergency Price Control Act was a war measure. As noted in Yakus v. United States, 321 U. S. 414, 64 S. Ct. 660, 88 L. Ed. 834, its declared purposes, among others, were "to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering . . . and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency. . . ."

Under the act the office of Price Administration was charged with the duty of promulgating regulations governing administrative procedure and the fixing of such maximum prices as to effectuate the purposes of the act.

Under the regulation, so promulgated and here applicable, Revised Maximum Price Regulation 251, both the seller and buyer were prohibited from participating in any transaction involving charges higher than the maximum prices established by the regulation. It is provided that "persons violating any provision of this regulation are subject to the criminal penalties, civil enforcement actions, suits for treble damages, and proceedings for revocation of licenses provided for by the Emergency Price Control Act of 1942, as amended." Neither the regulation nor the price control act contains a provision that in an action between the seller and buyer, as a condition precedent to the enforcement of charges, proof shall be made that such charges are within the maximum prices fixed by the regulation. In such an action it will be presumed that the parties acted lawfully. It will not be presumed that charges asserted by the seller are in excess of the maximum prices established by the regulation, or that a purchaser agreed to pay charges in excess of the maximum prices established by the regulation.

Herein, plaintiff having established performance of the contract, to avoid enforcement of the charges made in accord therewith on the ground of a violation of federal statute, clearly the burden was upon the defendant to show that such charges were in excess of the maximum prices established by O. P. A. regulations.

Defendant's contentions are based upon admissions made by the plaintiff.

On cross-examination of the plaintiff, defendant elicited the following information: That plaintiff did not make application to the Office of Price Administration for the establishment of ceiling prices for such contract work as herein performed, and did not secure approval from the O. P. A. of the prices charged; that he was engaged in the contracting business in March, 1942, and had kept records showing prices charged in 1942, and that he did not furnish the O. P. A. with copies of charges he had made in March, 1942, before entering into the instant contract. Plaintiff was asked if the cost of labor on the instant job was the same as he had paid in 1942, and stated that he would have to check up on that to see, that he believed it to be just a little more; that he made no application to the War Labor Adjustment Board of approval of payment of increased labor costs on this job.

An itemized statement made by plaintiff was introduced in evidence showing the amounts he had paid to a material company for materials, the amount he had paid to subcontractors, and the amounts he had paid for labor, and the amount of charges made for his own labor, in completing the job; all such amounts totaling the sum sued for. Invoices from the material company were introduced showing the separate items of material furnished plaintiff and the amounts charged for each item. Statements of the subcontractor were shown reflecting the charges made for each item of material and each hour of labor furnished plaintiff. Plaintiff's statement showed the rate per hour and the number of hours of labor paid for and performed by plaintiff.

Whether or not plaintiff, in the operation of his construction and contracting business, may have violated some regulation of the O.P.A. is not here material, as affecting his right to enforce his demand against the defendant, except that it be shown that such demand for the total selling price contemplated by the lump-sum contract, and sought to be collected, is in excess of the maximum price established by the applicable regulation.

Revised Maximum Price Regulation 251, as above noted, is here applicable. Art. 1, sec. 1, begins:

"(a) This regulation covers installations of building materials into any building, . . . and construction services performed in connection with any building. . . ."

Article II sets forth the method to be used in figuring maximum prices for sales on a lump-sum contract or job. Section 7, of art. II, provides:

"(b) Lump-sum job. For sales on the basis of a total selling price (inclusive of all costs and profit), commonly called a lump-sum contract, the maximum price shall be the sum of the following factors:

"(1) Estimated cost of materials (including installed equipment), not exceeding their maximum price; . . .

"(2) Estimated labor costs, not exceeding labor costs figured on the basis of labor rates prevailing or applicable to the area of installation on October 3, 1942, for the same class of mechanics or laborers employed on a comparable type of work.

"(3) Other estimated direct costs, including the cost of subcontracts; not otherwise provided in Paragraph (b) and (2) above, but not exceeding their maximum prices; . . . "

Other factors are stated, not here material, since as shown by the evidence no such costs were charged. They include reserves for contingencies in good faith foreseeable, selling expenses, profits on the overall sale, etc.

The maximum prices of materials do not appear to be governed by R. M. P. R. 251. The regulation applicable to the price of building materials is not cited or pleaded, and no contention is made that the evidence shows an overcharge for materials as one of the factors making up the total charges for the job or that plaintiff made any profit upon the materials furnished.

Contention is made that plaintiff charged labor costs in excess of ceiling prices based on plaintiff's testimony that he believed he paid a little more for labor than he had paid in 1942 on such jobs. The labor rates prevailing in or applicable to the area in 1942 for the same class of mechanics or laborers employed by the plaintiff is not shown, nor whether plaintiff paid the labor rate prevailing in or applicable to the area in 1942.

The cost of the subcontracts shown are the total of the charges made by the subcontractor for materials and labor and no profits by the plaintiff on the subcontracts are shown.

All the material costs for the job appear to be the same as the charges made by the material dealer. There is no presumption that the dealers' prices were in excess of the ceiling prices as established by the regulation applicable to such materials. The regulation by which the maximum prices for such materials is established is not pleaded or shown. In the absence of proof that the labor costs charged were in excess of labor costs figured on the basis of labor rates prevailing in or applicable to the area on October 3, 1942, for the same class of laborers employed on a comparable type of work, and in the absence of proof that the material costs exceeded the maximum prices, it cannot be said that the total selling price of the job and the price demanded was in excess of the maximum price established by Revised Maximum Price Regulation 251.

Upon proof of the performance of the contract for an agreed price and in the absence of proof that the price was in excess of the maximum price established by law, defendant's demurrer to plaintiff's evidence was properly overruled.

Defendant's second proposition reads as follows:

"In an action of equitable cognizance for foreclosure of mechanics' and materialmen's lien where defendant pleads failure of performance and violation of Emergency Price Control Act and there is uncontradicted evidence of defects of performance in detail and violation of Emergency Price Control Act which the trial court has not considered, judgment for plaintiff for full amount of contract is clearly against the weight of the evidence."

Hereunder reference is made to testimony concerning violations of regulations not in anywise pertaining to maximum prices or the methods of determining maximum prices. For the reason hereinbefore mentioned such violations, if any, are not material in this action.

Defendant directs attention to the testimony of a contractor who viewed the premises after the work was done and who expressed an opinion that the job should not have cost more than $246. This witness testified that inferior brick were used and poorly laid; that certain roofing materials and paint were improperly applied. This witness admitted that he had not viewed the premises before the work was done.

It is asserted that this testimony was uncontradicted and shows failure of plaintiff to perform the contract. Defendant's son testified that according to his observation, the men did not put in the number of hours claimed and that the material claimed to have gone into the job was not used.

As above noted, plaintiff testified that he and the defendant entered into an agreement that plaintiff was to make repairs on defendant's house as shown in written statement signed by both parties and for the sum of $475. Plaintiff identified an itemized statement as being a true statement of the material used and hours of labor employed on the job, and further testified that the materials used were first class and as good as could be bought; that defendant was present and observed the work being done, and that after the job was completed she expressed satisfaction with the job and at the same time

sought delay in payment of the agreed price, giving as her sole reason that she expected some money from her son. Plaintiff further testified that he had been engaged in construction work for several years.

The workmen employed by plaintiff on the job testified that they worked on the job the number of hours as shown in plaintiff's itemized statement and had been paid therefor the usual amount per hour they had been receiving for like work in the area. One of the workmen testified that he had been in the general repair and contracting business 18 years; that he had made an estimate of the whole job for defendant at $615. That he did the brick work on the job under subcontract from plaintiff.

Clearly, the judgment is supported by competent evidence and the weight of the evidence.

As her third proposition defendant contends the court erred in refusing and ruling out the testimony of an administrative officer of the Office of Price Administration.

The witness was asked various questions as to what the cost of the lump-sum job here involved should be under the O.P.A. regulations. All such questions solicited expressions of opinion as to the meaning and application of certain O. P. A. regulations, and statements of conclusions drawn by the witness after an estimate had been made of labor and materials used on the job. We find no error in the refusal of the court to permit the witness to answer such questions.

Under the fourth and final proposition submitted, defendant contends that her motion to dismiss plaintiff's action should have been sustained for the reason that plaintiff neither pleaded nor proved compliance with the Intangible Tax Laws of the state.

At the close of all the evidence defendant made a motion that the court "dismiss plaintiff's action for the reason that the court is without jurisdiction, under the statute, to render judgment in foreclosure or for money judgment in this case."

It is apparent from the record that the challenge to jurisdiction contained in defendant's motion had reference to the asserted failure of plaintiff to show compliance with the Federal Price Control Act, and that the motion was so treated by the trial court.

The pleadings and record of the testimony show no reference to the state Intangible Tax Law. The record does not reflect that the question of compliance with the Intangible Tax Law was called to the attention of the trial court, nevertheless the question may be raised in this court. State National Bank v. Wood & Co., 88 Okla. 292, 212 P. 1002; Boarman v. Home State Bank, 111 Okla. 285, 239 P. 579, and Mayor v. Bennett, 199 Okla. 579, 189 P. 2d 186.

The contract sued upon, as found by the court, was made September 25, 1945, and the agreed price became due and payable November 23, 1945. The suit was filed January 24, 1946. It was the duty of plaintiff, under the law, to list or assess his claim of indebtedness on and after January 1, 1946 (68 O.S. 1941 §1507), and to pay the taxes thereon when due. Although plaintiff by competent evidence established his case on the merits and proved his debt against the defendant, plaintiff was not entitled to judgment without making proof of compliance with the Intangible Tax Law (68 O. S. 1941, §1515), and the rendition of judgment by the trial court was erroneous. Mayor v. Bennett, supra.

The judgment is vacated and the cause remanded, with directions to the trial court to hear and determine the questions as to whether or not there has been compliance with the Intangible Tax Law, and if plaintiff establishes compliance, to render judgment for plaintiff, otherwise to dismiss plaintiff's action. See Mayor v. Bennett, supra, and the decisions therein cited.

Because of the reasons compelling reversal, the costs of this appeal must be taxed against plaintiff.

HURST, C.J., DAVISON, V.C.J., and CORN, GIBSON, ARNOLD, and LUTTRELL, JJ., concur. RILEY, J., concurs except as to assessment of costs.