CRAVENS et al. v. HUGHES.

No. 35069. Nov. 12, 1952.

Rehearing Denied Dec. 9, 1952.

*250 P. 2d 877.*

Hemry & Hemry and John B. Ogden, Oklahoma City, for plaintiffs in error.

Cheek, Cheek & Cheek, Oklahoma City, for defendant in error.

O'NEAL, J. The amended petition, upon which issues were joined, substantially alleges that plaintiff is a duly licensed and practicing civil engineer; that the defendants are the owners of 61 acres of unimproved prairie land, adjacent to the town of Nichols Hills, west of May avenue, near 70th street, north of Oklahoma City, Oklahoma; and that adjacent lands had been improved for residential purposes. That in May, 1946, defendants employed plaintiff to survey, lay off and plat and to prepare a plat and plan for recording into an addition to be known as Wilshire Boulevard addition. The defendants agreed to pay plaintiff for said services the usual, reasonable and customary charges, costs and expenses charged by engineers for like services performed within the Oklahoma City area. The plaintiff accepted such employment and performed all of the work, labor and services necessary in surveying, platting, laying off of streets, sewers, staking of lots and furnishing necessary plats for the approval of the engineering department of the city of Oklahoma City.

An itemized statement of the services performed, in the amount of $4,650, is attached to plaintiff's petition.

Plaintiff pleads one additional allegation in which he states that he prepared plans for the paving of the streets, and for the construction of sewers and water mains; and that the estimated costs thereof were the sum of $82,109.08, and that a reasonable fee for such services rendered at defendants' request is 7%, or the sum of $5,747.

Defendants, by answer, admit the ownership of the tract of land described in plaintiff's petition, admit that they are copartners, and state that they owe plaintiff the sum of $120 for surveying three (3) five-acre tracts of land referred to as the first item in paragraph 5 of the plaintiff's petition, and tenders said sum into court. Defendant R. D. Cravens pleads that he and plaintiff had a conversation with reference to subdividing the rest of said tract; that defendant advised plaintiff that he had no experience in subdividing tracts into building sites. Whereupon plaintiff represented that, as a civil engineer, he was familiar with costs covering paving, water mains, sewers and improvements necessary in subdividing divisions and preparing ac-

reage for residential purposes, and that such costs, including plaintiff's engineering fees, would not exceed $400 per lot. That plaintiff stated that if he was unable to furnish or obtain others to furnish said improvements and services at a cost which was not in excess of $400 per lot, defendants would not be obligated to pay plaintiff any sum whatsoever. Defendants agreed to said verbal proposal of plaintiff and, thereafter, plaintiff prepared some plats, but he could not procure governmental approval of his outfall sewer plans and his written estimate to defendants dated February 13, 1947, required payments for said items in the sum of $88,209.14, or at a cost of $501 per lot covered by the plat. Defendants state that thereafter the plans prepared by plaintiff covering the paving, sewer and water construction were submitted to the Osage Construction Company, Oklahoma City, Oklahoma, who filed with defendants a bid to furnish the material and work required under the plan in the sum of $172,481.80, or at a cost of $1,111 per lot. That defendants advised plaintiff of the bid of the Osage Construction Company, and the plaintiff advised defendants of his inability to procure a more favorable bid and stated that since he was not able to comply with his contract, defendants were under no obligation to pay him anything. Defendants further plead that they thereupon abandoned their plan to subdivide said tract, and thereafter, in September, 1947, defendants entered into negotiations with one C. E. Duffner and Roger Brawley, representatives of the Midland Construction Company, to sell said tract of land, or a portion thereof, to the Midland Construction Company; that plaintiff was present during said negotiations and advised the representatives of the Midland Construction Company that the defendants were not indebted to him in any sum whatsoever; that thereupon Midland Construction Company bought 42 acres of said tract and platted the same into 200 lots; that the plans heretofore prepared by plaintiff were not used either by said defendants or the Midland Construction Company in replatting said subdivision of 42 acres. Defendants further plead that plaintiff had full knowledge of all of the transactions with reference to the sale of said 42 acres by defendants to the Midland Construction Company, but made no demand on defendants for fees or services rendered defendants until the fall of 1948, long after the land had been sold and improved. Finally, defendants confessed judgment for the sum of $120 in favor of the plaintiff, and prayed that plaintiff be denied all other and further relief.

Plaintiff's reply is a general denial of all new matter pleaded in defendants' answer.

Upon trial the jury returned a verdict in favor of the plaintiff and against said defendants, in the sum of $4,400, and from the judgment rendered thereon, defendants appeal.

Although defendants raise seventeen separate grounds in their motion for a new trial, and sixteen separate grounds in their petition in error, they present these grounds by brief and argument as follows: (a) The court erred in permitting the plaintiff to prove his services in connection with what later developed to be the northwest sewer line and this testimony was prejudicial; (b) the court erred in instructing the jury in its instructions Nos. 9, 10 and 11; and (c) the court was without jurisdiction to render judgment for the plaintiff because of his noncompliance with the Intangible Tax Law. 68 O.S. 1951 §§1507 and 1515.

The evidence in support of the verdict substantially discloses that the plaintiff, a civil engineer, admitted to practice his profession, was employed by the defendant R. D. Cravens, in behalf of the firm of R. D. Cravens Company, to prepare plans and specifications for paving, water and sewer con-

struction; and for subdividing a tract of approximately 61 acres of land lying on the outskirts of Oklahoma City, then owned by the defendants. The tract in the record is referred to as Wilshire Boulevard addition to Oklahoma City. Engineering surveys of the tract were made and plans drawn which were submitted by plaintiff to defendants, and which plans and specifications were approved by the Oklahoma City planning commission, water department and city engineer. The defendant R. D. Cravens and his agent, Roger Brawley, on several occasions, came to plaintiff's office and made recommendations for changes in the plans, which changes were complied with by plaintiff. Under the oral agreement made between plaintiff and R. D. Cravens, plaintiff was to receive for his services the customary fees, costs and expenses charged by civil engineers engaged in the performance of similar work in the Oklahoma City area. After plaintiff had completed his work, and his plans for the subdivision of the tract had been approved by the planning board, water department, and city engineer, and were therefore ready for recording, plaintiff learned that the defendants were negotiating for the sale of all, or a portion, of the tract of the land in question. At the request of R. D. Cravens, plaintiff went to Mr. Cravens' office where he met Cravens and a Mr. Duffner, with whom Cravens was negotiating for a sale of an interest in said tract of land. During this conference the amount due plaintiff for his work was discussed. Plaintiff advised Mr. Cravens that if Mr. Duffner acquired an interest in the property, and if Mr. Duffner would assume the payment of plaintiff's bill, he would release Mr. Cravens of any obligation under their contract. After Mr. Duffner obtained an interest in the subdivision he procured another firm of engineers to replat the 42 acres acquired by him and his associates and thereafter filed a substitute plat or plans with the planning board covering that portion of the sub-division purchased from the defendants. The substituted plans were substantially the same as plans prepared by plaintiff.

The verdict of the jury is amply supported by the evidence.

The defendants do not challenge the verdict as not being supported by substantial evidence, but assert that the court erred in permitting the plaintiff to prove his services in connection with what later developed to be the northwest sewer line and this testimony was prejudicial.

The record discloses that plaintiff prepared plans for two types of sewers; one was to run to a low point pump over the hill at 63rd street, then into the city sewer line at May avenue at 50th street, and the second proposed plan was to run a gravity line from approximately the same point as the location of the pumping system and run in a southeasterly direction over to the west side of the Oklahoma City Golf & Country Club, then east across 63rd street and then diagonally southeast over to a point at Brookhaven where there was an existing city sewer line.

These alternative plans were submitted by plaintiff to the defendants and the proof sustains the contention that both plans were feasible and workable. Clearly, defendants had a choice of selection, and the evidence as to both plans was competent and relevant. Moreover, the defendants did not object to the introduction of the evidence as to the alternative plans, nor do they point out by brief wherein the admission of this evidence was prejudicial.

The admission of evidence with reference to the gravity line was not prejudicial for the further reason that the plaintiff did not make any demand for engineering services performed on that line.

The plaintiff, Hughes, was asked:

"Q. Just to get the record straight, are you requesting in this suit any reimbursement of monies spent by you for all of this work? A. On the gravity line?

"Q. Yes, sir. A. No, sir.

"Q. Now, in other words, what you are suing for and what you are asking the jury to render you a judgment for is for work which you have done on this subdivision for Mr. Cravens? A. That is right. Nothing outside of that."

We have held that where a defendant seeks a reversal of a judgment obtained against him on the ground of incompetent evidence, he has the burden of showing that such evidence so admitted over his objection was not only incompetent, but prejudicial, and on his failure to do so, this court will not reverse the judgment on such assignment. Union Petroleum Co. et al. v. Oklahoma, N. M. & P. Ry. Co., 114 Okla. 21, 242 P. 1027, and Render v. Richardson, 168 Okla. 122, 31 P. 2d 923.

Under defendants' Proposition II, it is asserted that the court erred in giving instructions Nos. 9, 10 and 11.

Instruction No. 9 is as follows:

"The defendants contend that plaintiff and defendants, through R. D. Cravens, made the oral agreement as set forth and alleged in defendants' answer, and that plaintiff was unable to perform, as therein alleged, and if you so find, and further find that thereafter the plaintiff and the defendant rescinded and abandoned said agreement, then and in that event your verdict shall be for the plaintiff for the sum of $120.00. The amount admitted to be due plaintiff."

Defendants assert that the instruction places too great a burden on defendants in that it requires defendants to prove two complete defenses, when either defense should have been sufficient. It is claimed that the court should have used the word "or" instead of "and" in the instruction. In other words, that if the jury found that the plaintiff was unable to perform as alleged in defendants' answer, the ver-

dict should be for defendants. An examination of defendants' answer, however, put in issue the question of the abandonment of the oral contract relied on. In paragraphs 7 and 8 of the answer defendants plead at length that said plaintiff admitted and told these defendants that if he could not get said improvements on said property for the sum of $400 or less, per lot, the defendants did not owe him any sum or sums whatever, so it is seen that a defense was based upon the abandonment of the agreement and, therefore, the instruction is not subject to the criticism lodged against it.

Defendants' objection to instruction No. 10 cannot be here considered, for the reason that defendants did not take exception to the instruction in the trial court. The instruction, however, is not subject to criticism as it simply covers the rule to be applied as to the weight and creditability to be given to a so-called "expert witnesses" testimony. What we have heretofore said with reference to instruction No. 9 applies with equal force to the criticism lodged as to instruction No. 11.

Defendants' Proposition III raises the question as to the jurisdiction of the trial court to hear and determine the controversy in issue, for the reason that the plaintiff did not comply with the Intangible Tax Law, 68 O.S. 1951 §§1507 and 1515. In support of this contention defendants rely upon our decision in McGill et ux. v. Cooper Supply Co., 196 Okla. 362, 165 P. 2d 829, and Mead v. Hellams, 200 Okla. 381, 194 P. 2d 603.

In McGill et ux. v. Cooper Supply Co., supra, the action was on an account and for a foreclosure of a materialman's lien. This court held that where plaintiff alleges the payment of an intangible tax, but fails to introduce any evidence thereof, it is error for the court to render judgment for the plaintiff.

In Mead v. Hellams, supra, it is disclosed that the suit was based upon an

account and subject to the Intangible Tax Law. We held there that in the absence of allegations and proof in compliance with the Intangible Tax Law, plaintiff could not recover, though the question was not raised by the defendants at the trial. Neither of these cases is applicable to the facts in the instant case, as it is disclosed by an examination of the pleadings that the plaintiff alleged the defendants were indebted to him in the sum of $10,397 for engineering services rendered defendants. The defendants admitted an indebtedness of only $120 and also denied plaintiff's employment as alleged, claiming plaintiff's services were without value, thus it appears that under these allegations and the evidence in support thereof, plaintiff's claim is based on an "unliquidated claim." In Cole v. Harvey, 200 Okla. 564, 198 P. 2d 199, we said:

"A liquidated account is one, the amount of which is agreed upon by the parties, or fixed by operation of law."

The following cases hold to the same effect: Gasper v. Mayer, 171 Okla. 457, 43 P. 2d 467; Lumbermen's Supply Co. v. Neal, 189 Okla. 544, 119 P. 2d 1017, and Dunlap v. Spencer, 191 Okla. 557, 131 P. 2d 994.

As we have indicated, no contention is made that the verdict is not supported by competent evidence. The record contains over 450 pages of testimony which we have perused, and have examined the 21 exhibits attached to the case-made, and from the entire evidence find that the plaintiff, in conjunction with his employees, performed the services extending over a period of 22 months. All of the plans, blueprints and specifications prepared by him were approved by the local governmental authorities. Under these circumstances, the jury was justified in finding that the laborer was worthy of his hire. The judgment in favor of the plaintiff and against the defendants in the sum of $4,400, with interest thereon at the rate of 6% per annum, from the 12th day of September, 1950, is affirmed.

It appearing that defendants have filed a supersedeas bond to stay the judgment on appeal, upon motion of the plaintiff, judgment is hereby entered against the sureties on said bond as therein approved.

Affirmed.

HALLEY, V.C.J., and CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.