Edward KEISPERT and Earnest Keispert, Individually and as partners, d/b/a Keispert Food Market, and Hallie Grover Nix, Plaintiffs in Error,

v.

William Lee WILLIAMS, Defendant in Error.

No. 38191.

Supreme Court of Oklahoma.

Nov. 12, 1958.

Rehearing Denied Dec. 16, 1958.

Dudley, Dudley & Dudley, Oklahoma City, for plaintiffs in error.

Melvin F. Pierce, Pierce, Mock & Duncan, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

Defendant in error, herein referred to as plaintiff, is an Oklahoma City traffic policeman. He was injured when the 3-wheeled motorcycle, he was driving collided in the 2500-block on South Western Avenue, in Oklahoma City, with a panel truck, driven by the plaintiff in error, Nix, an employee of the truck's owners, the plaintiffs in error, Edward and Earnest Keispert.

On the theory that said truck driver's negligence caused the accident, said plaintiff sought recovery in this action against Nix and said Keispert Brothers, d/b/a Keispert Food Market (hereinafter referred to as defendants), of $198.00 for hospital and medical expenses already incurred, $200.00 he alleged would be incurred in future medical bills, and the sum of $10,000.00 for physical and mental suffering and loss of time and impairment of his earning capacity, allegedly resulting from the accident. Plaintiff obtained a general verdict and judgment in the sum of $4500.00, and defendants perfected this appeal.

At the trial, the undisputed evidence disclosed that, when the accident occurred, defendants' truck had been headed north on Western Avenue and was turning west in front of southbound traffic on the western side of said street, in an attempt to enter an alley which extended along the Keispert Food Market building's south side. A Mr. Nolan Dean, who was driving in the lane for southbound traffic nearest defendants' truck, had stopped his car and motioned Nix to turn the truck west across said lane, in front of him, but, as Nix did so, plaintiff's motorcycle came alongside Dean's car and hit the truck on its right, or north, side near the right front door. It was one of plaintiff's theories that, in making the left turn across the western side of Western Avenue, in front of southbound traffic on said street, Nix, defendants' truck driver, was guilty of negligence in violating certain traffic rules enacted into law by Oklahoma City ordinance. Likewise, defendants claimed plaintiff was guilty of negligence in violating certain other traffic rules, which are said, without contradiction, to be different parts of the same city ordinance. The ordinance involved is "Ordinance 5791."

Upon consideration of the opposing parties' respective positions in this appeal, the crucial provision of said ordinance, as far as concerns plaintiff's claim of defendants' negligence, is found in Tit. 9, sec. 56 of said ordinance, and reads, in material part, as follows:

"No vehicle * * * shall turn to the left when going into * * * an alley, nor shall such vehicle * * * cross any street * * * when going into * * * an alley; * * *

"The driver of any vehicle intending to make a left turn across the street * * * in entering * * * any driveway or entranceway * * * shall first yield the right-of-way to any other traffic proceeding on the street which is near enough to constitute an immediate hazard, and in no event shall the driver make, or attempt to make, such left * * * turn where such turn would or does interfere with the normal movement of, or delay, or block other traffic using the street."

As far as concerns defendants' claim of plaintiff's negligence in passing the Dean car on its right side and thus assertedly being, with his motorcycle, in a place where he had no lawful right to be, at the time of the collision, the most pertinent part of the ordinance is found in Tit. 17, sec. 95(1) thereof, as follows:

"The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass *to the left* at a safe distance and shall not again drive to the right side of the street or roadway until safely clear of the overtaken vehicle." (Emphasis ours.)

Some of the evidence introduced on behalf of the plaintiff, and particularly portions of his own testimony, indicated an effort to bring his right-side passing of Dean's car within the emphasized portion of Tit. 17, sec. 97, which reads in part, as follows:

" * * * The driver of a vehicle may overtake and allowing sufficient clearance pass another vehicle proceeding in the same direction *either* upon the left *or upon the right* of a street * * * with unobstructed pavement *of sufficient width for four or more* lanes of moving traffic when such movement can be made in safety. No person shall drive off the pavement or upon the shoulder of the street or roadway in overtaking or passing on the right." (Emphasis ours.)

Into his Instruction No. 9 to the jury, the trial judge copied all parts of the above-cited sections of Ordinance 5791, and his doing so, is the error referred to in Proposition I of defendants' brief. They therein assert that this ordinance "was not pleaded and proved." We find insufficient merit in this proposition of error, and, in view of what the record shows concerning the procedure at the trial, and the position assumed by the respective parties, defend-

ants' argument relative thereto demonstrates no ground for reversing the trial court's judgment. Our examination of the casemade does not support defense counsel's claim that the above quoted sections were not pleaded; and—as to their proof—albeit the record contains no such ordinance, or copy thereof, labeled as an exhibit, among those introduced at the trial, we think this is of no material significance under the particular circumstances of this case. As plaintiff's counsel points out, identification of pertinent city ordinances for introduction into the evidence was waived at the pre-trial conference; and the court reporter's transcription as to what occurred at the trial, with reference to their introduction into evidence, is as follows:

"Mr. Dudley: The defendants would like to offer in evidence, and it is plead in the answer, Title 17, section 95, of the Oklahoma City ordinances.

\* \* \* \* \* \*

"Mr. Duncan: I want the entire applicable ordinance offered, the whole ordinance.

"Mr. Dudley: We agreed on the ordinances.

"The Court: There is no use to get the part that is not applicable.

"(Thereupon a further conversation was had between counsel and the court at the court's desk regarding the city ordinances).

"The Court: Well, you agreed as to the ordinances at the pretrial.

"Mr. Dudley: Well, I will read the ordinance. 'Title 17, Section 95, Oklahoma City Ordinances—' (interrupted)

"Mr. Duncan: Just a minute, Your Honor, we don't have to read these ordinances. They will be a matter of instructions to the jury. I didn't read mine.

"The Court: No, they will be in the instructions.

"(Thereupon counsel approached the court's desk and a conference was had by counsel with the Court)."

The record then reveals that the trial was briefly recessed, and that immediately after the recess, the following occurred:

"(Thereupon a conference was had between counsel and the Court, out of hearing of the jury and out of hearing of the reporter).

"Mr. Duncan: I ask leave of the court to amend to plead that ordinance."

In view of the above, we cannot say with certainty that there was neither an express, or tacit, agreement between the two opposing counsel and the court, that the pertinent ordinance provisions, as later copied into the instructions given the jury, could be considered by that body as if introduced in evidence. And, we assume from what appears in the above-quoted excerpt from the record that such agreement encompasses the sections of Ordinance 5791, which defendants relied upon, as well as those plaintiff relied upon. Under the circumstances indicated herein, defendants' contention that Instruction No. 9 was error because the ordinance provision set forth therein was not pleaded and proved merits no further consideration.

Under their Proposition I, defendants make the further contention that that part of Tit. 17, sec. 97 of Ordinance 5791, authorizing, in the instance of a street having unobstructed pavement wide enough "for four or more lanes of moving traffic", one vehicle to pass another proceeding in the same direction, on its right, is inapplicable to this case; and, for this further reason, the trial court's giving of Instruction No. 9 was error. Defense counsel argues that the inapplicability of that portion of section 97, is obvious because the undisputed evidence shows that South Western Avenue, where the accident occurred, does not have "unobstructed pavement of sufficient width for four or more lanes of moving traffic \* \* \*". Since there is a relation between this argument and the one advanced under defendants' Proposition II, to the effect that the trial court erred in admitting picture exhibits

"H" and "G", we will consider these arguments together. These exhibits are enlarged, or "blown-up", reproductions of actual photographs, taken from different angles, of the locality at which the accident occurred. Said pictures were not taken until long after the accident occurred and defense counsel says his objection to their introduction as "incompetent, irrelevant and immaterial" was based upon their inaccurate indication that South Western Avenue had three, instead of only two, traffic lanes at the time and place of the accident. Defense counsel speculate as to the jury's having become confused by comparing these exhibits with plaintiff's exhibits "C", "B", "E", and "F", which were also enlarged photographs of the locale of the accident, but which, unlike Exhibits "G" and "H", bear no clear indication (by showing painted white stripes on Western Avenue's pavement) that it was wide enough for three lanes of motor vehicles to pass parallel to each other at the point where the accident occurred. We cannot say that the admission of Exhibits "G" and "H" was erroneous on account of incompetency. We think that since the applicability of that part of Section 97, supra, allowing right-side passing on streets having unobstructed pavement wide enough for four lanes of traffic was relied upon by plaintiff to refute the defense of his contributory negligence in such passing, and, since consequently the width of South Western Avenue's pavement, at the scene of the accident, was an issue to be determined in the case, and the pictures introduced as Exhibits "G" and "H" showed much more clearly and convincingly, than any other evidence, that said street was not that wide at that point, said pictures were fully competent as evidence; and the trial judge committed no error in allowing their admission. And, we might add, that, in view of the pictures' rebuttal value to defendants, from which standpoint they might be considered more favorable, than unfavorable to them, their admission could hardly be said to have created the prejudice necessary for reversible error. See Cravens v. Hughes, 207 Okl. 503, 250 P.2d 877.

As far as we can discern from examining them, plaintiff's Exhibits "A", "B", "C", and "D" must have been made before those introduced as Exhibits "G" and "H", at a time when no painted traffic lane markings were visible on South Western Avenue at the scene of the accident, and before (as the evidence shows) the worn off markings for the two principal traffic lanes were repainted and there was added new ones far enough apart for the passage between them of a third lane, or second lane of southbound traffic. In fact those first four lettered exhibits would seem to corroborate Mr. Earnest Keispert's testimony to the effect that, at the time of the accident, the paved portion of South Western Avenue at that point was not wide enough for two lanes of southbound traffic in addition to the one northbound lane; and that, it was not until after the accident occurred, that the third lane of pavement depicted so clearly in Exhibits "G" and "H" was constructed. If that was the situation, it furnished a conceivable foundation for the jury's determination that the portion of the street upon which plaintiff's motorcycle was traveling at the time of the accident was "the shoulder of the street or roadway", within the meaning of that term as used in the last quoted portion of Title 17, Section 97, supra. In this connection, assuming (as defendants argue) that the first quoted provision of said section was inapplicable to the evidence of this case, we notice they make no such contention as to the last one. Under the circumstances, and, in the absence of any showing in the record that defense counsel requested the court to omit the part of said section they now complain of, we are of the opinion that the court's copying verbatim the entire section into its Instruction No. 9, constituted no cause for reversal. In this connection, see Ellis v. Kansas City Public Service Co., Mo.App., 203 S.W.2d 475, and other cases cited in notes 65–67, both inclusive, to 88 C.J.S. Trial § 337b, and §

382, note 78, and Am.Jur., Vol. 3, "Appeal and Error", sec. 1120, Note 11, Vol. 53, "Trial", sec. 542. One reason for this conclusion is our belief that, with the evidence so clearly showing that the "unobstructed pavement" at the place of the accident was not of sufficient width for four lanes of moving traffic, the members of the jury were able to distinguish, for themselves, the applicable provisions of section 97, from the inapplicable ones. In this connection, see St. Louis-San Francisco Ry. Co. v. Withers, Okl., 270 P.2d 341, 346, and the cases there cited. Defendants urge no error in, and have requested no review of, the trial court's ruling on the sufficiency of the evidence for submission to the jury, nor do they contend that the evidence is insufficient to support the verdict and judgment on the issue of their liability. The substance of their only reference to the evidence on that issue is that it made a "close case", or was in virtual equipoise on that issue, so "who can say" that the alleged error in Instruction No. 9 "did not affect the jury or confuse it" to their prejudice? Our answer to the question is that we have examined the evidence and find that, on this issue, it furnishes the verdict and judgment adequate support; and we find therein no indication whatsoever that the jury was prejudiced against defendants in determining that issue against them.

 Defendants' Proposition III is that the verdict is excessive. In support of this proposition, they point out that though plaintiff was disabled, as a result of his injuries from the accident, from performing his duties as a police officer for one month, he continued to receive his regular salary during such period of his sick leave. This fact furnishes defendants' argument no support. See Huey v. Stephens, Okl., 275 P.2d 254, 257. Defendants recognize that there was evidence showing that, as a result of the accident, plaintiff lost, for a period of one year, the income he had been receiving from other jobs he previously had been performing, in addition to, and outside the realm of his city police duties; but they say he had been averaging only $800.00 from those sources and that the only other evidence of loss to him was his hospital bill of $123.85, so that "under the evidence plaintiff was actually out" only $923.50, or much less than the $4500.00 awarded him by the jury. Defendants' statement fails to take into consideration the medical expenses plaintiff has incurred since leaving the hospital, and the evidence showing the pain and suffering and inconvenience he has undergone since he regained consciousness after the collision, and continued to suffer at intermittent times afterward to the date of the trial. There is no fixed standard for measuring such elements of such damages and the amount of a person's recovery therefor must be left to the judgment of the jury, subject only to correction by the courts for abuse or passionate exercise. Otis Elevator Co. v. Melott, Okl., 281 P.2d 408; Tulsa City Lines v. Geiger, Okl., 275 P.2d 325; 15 Am.Jur., "Damages", sec. 71. Here, we cannot say there is no reasonable relation between the amount of plaintiff's recovery and the evidence of the damages he suffered. Said amount is not of sufficient size to shock the conscience or to indicate in and of itself, that its assessment was a result of passion and/or prejudice; nor has our examination of the evidence as a whole disclosed any such indication.

As we have found in the arguments advanced by defendants, no cause for reversing the judgment of the trial court, or ordering a remittitur of any part of the damages thereby awarded plaintiff, said judgment is affirmed.

Plaintiff, the defendant in error herein, calls our attention to the facts (as shown by the case-made) that the trial court ordered defendants' filing in said court of a supersedeas bond in the amount of $6000.00, executed by them, as principals, and Mid-Continent Casualty Company, as surety; and he requests judgment on said bond in accord with this Court's Rule 31, 12 O.S.A. c. 15 Appendix. In accord with said request, judgment is therefore here

rendered against Mid-Continent Casualty Company, as well as said defendants, on said bond in the principal amount of $4500.-00, together with interest at the rate of 6 percent per annum from September 9, 1957, and the costs of this action until paid; and the trial court is directed to enforce this judgment as if rendered in said court.

CORN, V. C. J., and DAVISON, HAL-LEY, JOHNSON, WILLIAMS and CARLILE, JJ., concur.

JACKSON, J., dissents.